**UNITED STATES of America,
Plaintiff,**

v.

**Edgar CAMP, Defendant.
Civ. No. 1551.**

United States District Court
E. D. Washington, N. D.
Jan. 26, 1959.

Dale M. Green, U. S. Atty., Spokane, Wash., for plaintiff.

Delbert R. Scoles, Colville, Wash., Erickson & Freeman, Spokane, Wash., for defendant.

WOLLENBERG, District Judge.

The United States, on behalf of the Secretary of the Department of the Interior, seeks to enjoin the defendant, an enrolled member of the federated tribes of the Colville Indian Reservation, from grazing cattle on restricted Indian lands located in the Colville Reservation without a grazing permit or lease from the Superintendent of the Colville Indian Agency. The parties stipulated to the following facts incorporated in a pretrial order made on October 24, 1958:

The restricted Indian land described in the complaint consists of *tribal and allotted* lands owned by the United States in trust for the federated tribes of the Colville Reservation and the individual members thereof. All of said lands are within the confines of the Colville Indian Reservation located in the Eastern District of Washington. The specific land involved herein constitutes a portion of a range unit, as the term is used in the Indian Reorganization Act of June 18, 1934, [1] (hereinafter called the "Reorganization Act") and as described in the regulations promulgated by the Secretary of Interior (hereinafter called the "Secretary"). The tribal and allotted lands within this range unit are largely unfenced. Cattle and other livestock grazing thereon are generally unsupervised, and naturally, without discriminating, graze on both the tribal and the allotted lands. It is further stipulated that on April 6, 1935, the Colville Tribes voted to reject the provisions of the Reorganization Act in a plebiscite duly called by the Secretary of the Interior under the provisions of that Act.[2]

From approximately April to November of 1956 and 1957, and during part of 1958, the defendant permitted approximately 52 head of his cattle to graze upon the said restricted Indian lands without obtaining a grazing permit or lease from the Superintendent of the Colville Indian Agency as required by regulations duly promulgated by the Secretary of the Interior. 25 C.F.R.

---

1. Section 466 of Title 25 United States Code Annotated provides that "The Secretary of the Interior is directed to make rules and regulations *. * * to restrict the number of livestock grazed on Indian range units to the estimated carrying capacity of such ranges, and to promulgate such other rules and regulations as may be necessary to protect the range from deterioration, to prevent soil erosion, to assure full utilization of the range, and like purposes."

2. 25 U.S.C.A. § 478 provides that § 466, among others, footnote 1, supra, "shall not apply. to any reservation wherein a majority of the adult Indians, voting at a special election duly called by the Secretary of the Interior, shall vote against its application * * *."

Part 151. Although the defendant made an application for a grazing permit in March of 1956, he refused to pay the grazing fees required by the regulations. 25 C.F.R. Part 151. This action was commenced by the government when the defendant, after due notice, consistently refused to remove his cattle from the plaintiff's land. The Colville Business Council (hereinafter called the "Council") has not requested that these legal proceedings be instituted.

The regulations sought to be applied herein to this defendant (25 C.F.R. Part 151) provide for dividing the range area into range units, for fixing the maximum number of livestock that may be grazed, and for issuing grazing permits. These regulations purport to be adopted pursuant to (1) the *general authority* of the Secretary "to protect Indian tribal lands against waste,[3] and (2) also pursuant to the express mandate of 25 U.S. C.A. § 466 as to those tribes which voted to accept its provisions.[4] Where *tribal* land is available within a range unit the regulations provide that free grazing permits may be granted to Indians up to the total maximum grazing capacity of said tribal lands. 25 C.F.R. 151.9. Section 151.13 of the regulations further provides that the Indian tribal governments "*shall authorize* for *tribal* lands, * * * (a) the allocation of range units to Indian permittees * * * (b) the rate per head to be charged for allocations authorized under paragraph (a) * * * (e) the number of livestock which may be grazed free of charge * * * on the tribal lands * * *". However, with respect to *allotted* lands the tribal council may only make *recommendations* on such matters. 25 C.F.R. 151.13.

Resolution 1955–29 enacted by the Colville Indian Business Council on March 11, 1955, and approved by the Commissioner of Indian Affairs on May 12, 1955, authorizes free grazing upon the open range for any Indian family of up to 100 head of cattle. Resolution 1955–129, as amended by 1956–34, enacted by said Business Council and approved by the Superintendent of the Indian Agency, requires all Indian stockmen to obtain a grazing permit as required by tribal and federal regulations. Where the range unit contains *both* tribal and allotted lands, Resolution 1955–29 requires that the Indian permittee shall pay a fee for the use of the allotted lands within said range unit. These funds are used to pay the individual holders of allotments (hereafter called "allottees") within the range unit for use of such lands.

This latter provision apparently was a source of much irritation to the Indian stockmen, and defendant's refusal to pay it has led to the present action. To relieve this tribal agitation the Council, in Resolution 1957–167, devised a plan whereby the Indian stockmen could be issued free grazing permits up to the limit set forth in Resolution 1955–29 even though the range unit contains both tribal and allotted lands, and at the same time provide the allottees fees for the use of their allotted land. The plan made such fees payable out of grazing permit funds collected from nonmembers of the Tribe.

Thus, we have a situation where all the various resolutions in evidence herein concerning range management, except 1957–167, passed by the Council have conformed to applicable regulations promulgated by the Secretary of the Interior. And Resolution 1957–167 apparently deviates from the federal regulations only in delineating the method and source of the funds to be used to pay the allottees for the use of their land. The Council has not questioned the right of the allottees to receive payment for use of their land.

Thus, the question before this Court is whether the Secretary or the Council has the ultimate authority to determine the source and the manner of paying the allottees for the use of their allotments by the Indian stock operators.

---

3. 25 C.F.R. 151.1.

4. 25 C.F.R. 151.2.

If the Council has such authority, then the defendant is entitled to judgment herein, since Resolution 1957–167 merely requires him to obtain a grazing permit, a condition which defendant does not find objectionable. If on the other hand, the Secretary of Interior is vested with this authority, the plaintiff is entitled to the equitable relief sought as the defendant, by his refusal to pay the grazing fee, has failed to comply with existing valid regulations.

The plaintiff concedes that the authority to determine the source of the funds, as applied to the Colville Tribes, does not come from regulations promulgated pursuant to 25 U.S.C.A. § 466. The plaintiff necessarily must rely on his power when acting in his capacity as trustee and guardian, or on the broad delegations of authority contained in 5 U.S.C. § 485 [5] and 25 U.S.C.A. § 2 [6] for the authority sought herein. The defendant, on the other hand, contends that the authority which the plaintiff seeks herein is part of the range management program provided in 25 U.S.C.A. § 466, and that this section has preempted whatever discretionary authority of this nature previously existed in the Secretary. And since the Colville Tribes have rejected said provision, as they had the right to do, it is the Congressional intent that such matters are now within the exclusive province of the tribal Council. Thus, the defendant would have the Court in this action determine that the Secretary has no authority to apply 25 C.F.R. Part 151, nor any other range management program, to the Colville Tribes in view of 25 U.S.C.A. §§ 466 and 478. Heretofore, no court apparently has had occasion to pass upon the effect of a rejection of § 466 on the Secretary's power. This Court is of the opinion that § 466, which places an express *manda-*

tory* duty of conserving Indian tribal resources on the Secretary toward those tribes which adopted it, was not intended to limit the Secretary's previously existing general *discretionary* authority to set up conservation programs on Reservations, regardless of whether the tribe had rejected § 466.

However, this Court need not go so far. Even assuming that the Council, by virtue of the Tribes' rejection of § 466, rather than the Secretary, is charged with final authority in *range management matters*, the Resolutions in evidence herein make it plain that the only point of difference between the Council and the Secretary is over the *source* of the money used to pay the allottees. In all other respects the Council has seen fit to adopt or accept the federal regulations.

It seems clear that this dispute does not come within the scope of § 466 dealing with range conservation and management. Rather, the collection of funds to pay the allottees for use of their land is an exercise of the Secretary's authority qua trustee and guardian, or within the general scope of his authority under 25 U.S.C.A. §§ 2 and 9, and 5 U.S.C.A. § 485. The regulations make it clear that 25 C.F.R. Part 151 was promulgated under authority of § 466 as to those tribes which accepted it, and also under the Secretary's general authority to manage Indian affairs. Thus, regardless of whether § 466 has preempted whatever authority the Secretary previously had to institute range management programs, his power as trustee to protect the rights of the individual allottees does not derive from the range management provisions. That the Secretary has this power qua trustee cannot be doubted. The courts have broadly construed the delegations of power contained in 5

---

5. 5 U.S.C.A. § 485 provides the "the Secretary of Interior is charged with the supervision of public business relating to the following subjects and agencies: * * * 10. Indians."

6. 25 U.S.C. § 2 provides "the Commissioner of Indian Affairs shall, under the

direction of the Secretary of the Interior, and agreeably to such regulations as the President may prescribe, have the management of all Indian affairs and of all matters arising out of Indian relations."

572

U.S.C.A. § 485 and 25 U.S.C.A. § 2. For example, in United States v. Ahtanum Irrigation District, 9 Cir., 1956, 236 F. 2d 321, the court conceded that there was no specific statute, or regulation, or executive order authorizing the Secretary to execute an agreement on behalf of the Indians with white settlers giving the latter 75% of the natural flow of a stream where the water from such stream had been impliedly reserved to the Indians by treaty. Nevertheless, the court, relying on the very broad and general authority granted in §§ 485 and 2, held that the agreement was valid. The court quoted the following with approval from Rainbow v. Young, 8 Cir., 1908, 161 F. 835, 838: "In our opinion the very general language of the statute makes it quite plain that the authority conferred upon the Commissioner of Indian Affairs was intended to be sufficiently comprehensive to enable him, * * * to manage all Indian affairs, and all matters arising out of Indian relations, with a just regard, not merely to the rights and welfare of the public, but *also to the rights and welfare of the Indians* * * *." The Secretary is charged not only with the duty to protect the rights and interest of the tribe, but also the rights of the *individual* members thereof. And the duty to protect these rights is the same whether the attempted infringement is by non-members or members of the tribe. It is clearly within the general scope of the Secretary's power and duty to protect the financial interest of the individual allottees, whose lands he holds in trust, by demanding that those persons, be they members or nonmembers of the Tribe, who use the allotted lands pay for such privilege.

Therefore, in accordance with the above opinion, the Court orders and hereby directs that a decree be entered in accordance with the prayer for equitable relief contained in the complaint; counsel for plaintiff to prepare an injunction in accordance with this opinion.